**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PETROS ODACHYAN,
*Defendant-Appellant*.

No. 11-50253

D.C. No.
2:08-cr-00414-ODW-2

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
January 7, 2014—Pasadena, California

Filed April 17, 2014

Before: Stephen Reinhardt and Richard R. Clifton, Circuit
Judges, and Jennifer A. Dorsey, District Judge.[*]

Opinion by Judge Clifton;
Concurrence by Judge Reinhardt

---

[*] The Honorable Jennifer A. Dorsey, District Judge for the District of
Nevada, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed in part a sentence for conspiracy to commit health care fraud and dismissed the remainder of the appeal based on the defendant's waiver of the right to appeal.

The panel held that a statement by the district court at sentencing did not reflect such a high degree of favoritism or antagonism as to make fair judgment impossible and therefore does not evidence constitutional error, where it appears that the district court's statement was in response to arguments made by the defendant, was offered to explain why the district court was not persuaded by them, and at most reflects a "general frustration" with the type of argument the defendant made at sentencing.

The panel dismissed the defendant's remaining challenges as barred by his knowing and voluntary waiver of the right to appeal. The panel wrote that the fact that the plea agreement permitted an appeal on certain specified grounds and acknowledged the possibility of reversal or vacatur on appeal does not support the proposition that the defendant is permitted to appeal on other grounds.

Concurring, Judge Reinhardt wrote that the district court's statement, although not rising to the level of a constitutional violation, has no place at a sentencing hearing, both because it is contrary to the requirement that a judge sentence on an

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

individual basis and because it lends the appearance of stereotypical thinking regarding alienage or membership in a particular racial, ethnic, or religious group.

---

**COUNSEL**

David E. Kenner (argued), Brett A. Greenfield, Kenner & Greenfield, APC, Encino, California, for Defendant-Appellant.

Melanie Sartoris, Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

**OPINION**

CLIFTON, Circuit Judge:

Defendant Petros Odachyan pled guilty, under a plea agreement, to conspiracy to commit health care fraud. He was sentenced to imprisonment for 51 months. He is an immigrant from Armenia and argues that a statement by the district judge at sentencing evidenced an anti-immigrant bias in violation of his constitutional rights, resulting in an illegal sentence. He also presents other challenges to his sentence and argues that the waiver of his right to appeal to which he assented in the plea agreement was not intended to preclude the arguments he presents. We hold that the district court's statement at sentencing does not evidence constitutional error and that Odachyan validly waived the right to appeal the remaining issues he seeks to argue. We affirm the sentence

as to the constitutional challenge and dismiss the remainder of the appeal.

## I.  Background

Between December 2005 and April 2007, Odachyan and two other Armenian immigrants developed and executed a scheme to defraud the federal Medicare program.  Odachyan was subsequently indicted on ten counts charging conspiracy to commit health care fraud, health care fraud, causing an act to be done, and criminal forfeiture.  Based on a plea agreement, Odachyan pled guilty to one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1347.  The remaining counts were dismissed.

The plea agreement discussed sentencing, including an agreement between the government and the defendant as to the base offense level under the advisory Sentencing Guidelines.  The parties reserved the right to argue for adjustments and departures under the guidelines and noted that there was no agreement as to criminal history.  The agreement also noted that the court was not bound by the stipulations in the agreement.

As part of the plea agreement, Odachyan waived his right to appeal, provided that (a) the sentence was within the statutory maximum and was not unconstitutional, and (b) the sentence imposed by the court was "within or below the range corresponding to a total offense level of 21, and the applicable criminal history category," as determined by the district court.  The government waived the right to appeal the sentence on similar terms, as long as it was within or above the range based on an offense level of 17.  Odachyan also

retained the right to appeal other elements of the restitution order or terms of supervised release.

In sentencing Odachyan, the district court received and considered position papers from the parties, a presentencing report and recommendation from the probation office, and the plea agreement itself. During the sentencing hearing, the court made a statement that is the basis for Odachyan's current claim of constitutional error:

> Just so everyone knows, I am considering the high end of [the guideline] range. . . . And let me just briefly explain why, aside from the obvious reasons, aside from the fact that we are talking about an awful lot of money to an organization whose sole purpose is to provide for the medical needs of the most vulnerable in our society and aside from the fact that I grow — I am in constant wonder and amazement why it is so many people come to this country seeking a better life and then prey on this government's institutions as their own personal piggybanks and then direct the court to look at the terrible conditions from which they came as somehow an excuse or mitigating factor.

The district court determined that the total offense level was 19 and that Odachyan's criminal history category was II. Odachyan was sentenced to 51 months imprisonment followed by three years of supervised release. He was also ordered to pay more than $600,000 in restitution.

## II. Constitutional error claim

Odachyan contends that the district court's anti-immigrant bias unfairly influenced the sentence. Odachyan did not bring a motion to disqualify the district judge under 28 U.S.C. § 144, which provides that a judge "shall proceed no further" when presented with a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice." *See United States v. Carignan*, 600 F.2d 762, 763–64 (9th Cir. 1979). Nor does Odachyan argue for disqualification under 28 U.S.C. § 455(a), which requires a judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned," including "[w]here he has a personal bias or prejudice concerning a party." *See Liteky v. United States*, 510 U.S. 540 (1994). Although Odachyan does not identify a precise legal basis for his argument, we accept the proposition that an anti-immigrant bias in sentencing could violate constitutional rights to due process and equal protection and treat the claim as such. As the Supreme Court observed in *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), "a biased decisionmaker [is] constitutionally unacceptable." *See also Hurles v. Ryan*, 706 F.3d 1021, 1036 (9th Cir. 2013) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (a "fair trial in a fair tribunal is a basic requirement of due process").

The appeal waiver in the plea agreement by its terms does not preclude an argument that the sentence is unconstitutional, and we have jurisdiction to consider a claim of constitutional error in any event. *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (an appeal waiver will not apply if the sentence violates the Constitution). Recognizing this authority, the government does not contend that

Odachyan has waived his right to argue a denial of due process.

In support of his argument, Odachyan cites the Supreme Court's decision in *Berger v. United States*, 255 U.S. 22 (1921), in which the Court held that a district court judge's comments were sufficient to support an affidavit of bias or prejudice under the then-applicable statute (Section 21 of the Judicial Code). Defendants in that case were charged with violations of the Espionage Act during World War I, and some of the defendants had been born in Germany. The district judge who presided over the trial was reported to have said in substance prior to trial: "One must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country. Their hearts are reeking with disloyalty." *Id*. at 28. The Court held that the district judge should have disqualified himself in response to the defendants' motion. *Id*. at 36.

The episode discussed in *Berger* was later cited by the Court in *Liteky v. United States*, 510 U.S. 540 (1994), the only other authority cited by Odachyan in connection with this argument. In *Liteky* the Court affirmed a conviction and concluded that the district court did not err in denying a motion for disqualification, with the following observation:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as

to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German–American defendants . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id*. at 555–56 (emphases in original).

We are not persuaded that the statement by the district court in this case reflected such a "high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. at 555. "[O]nly in the most extreme of cases would disqualification on this basis be constitutionally required." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986) (explaining that a "general frustration with insurance companies" does not establish a constitutionally disqualifying bias); *see also Liteky*, 510 U.S. at 558 (Kennedy, J., concurring) ("I think all would agree that a high threshold is required to satisfy this standard."). This is not an extreme case.

The district judge did not suggest that all immigrants are criminals at heart regardless of their culpable conduct, as had the judge in *Berger*. The judge in this instance was responding to Odachyan's sentencing position. Odachyan's supplemental sentencing memorandum highlighted Odachyan's experiences prior to coming to the United States, including his family history and his own childhood in Armenia, his brother's death, an earthquake, and food shortages that led to his family's emigration, as mitigating factors in sentencing. Attached to the memo were many letters from others describing these conditions.

In that context, it appears that the district court's statement was in response to arguments made by Odachyan and was offered to explain why the district court was not persuaded by them. At most, the statement reflects a "general frustration" with the type of argument Odachyan made at sentencing. *See Lavoie*, 475 U.S. at 821. That is not enough "to overcome the presumption of honesty and integrity that we accord to the determinations of a judge." *Crater v. Galaza*, 491 F.3d 1119, 1132 (9th Cir. 2007) (internal quotation marks omitted).

## III.    Waiver of Other Arguments

This court reviews *de novo* whether or not a defendant waived his right to appeal his sentence. *United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004).

Odachyan waived his remaining challenges.[1]   As described above, the plea agreement provided that Odachyan waived the right to appeal his sentence, with limited exceptions, as long as the sentence was within the statutory maximum, was constitutional, and was "within or below the range corresponding to a total offense level of 21, and the applicable criminal history category as determined by the [c]ourt."

None of the exceptions contemplated by the plea agreement apply here.  The court imposed a sentence of 51 months' imprisonment, which is within the ten-year statutory maximum.  18 U.S.C. §§ 1347(a), 1349.  As noted above, the district court determined Odachyan's criminal history category to be II.  That category combined with a total offense level of 21 resulted in a guideline sentence of 41 to 51 months, and the sentence imposed was within that range. U.S.S.G. § 5A.

Odachyan does not argue that the agreement was not knowingly and voluntarily made, and there is nothing that indicates that it was not.  The court conducted a proper Rule 11 colloquy wherein Odachyan indicated he both understood and agreed to the waiver.  Fed. R. Crim. P. 11; *United States v. Watson*, 582 F.3d 974, 986–87 (9th Cir. 2009) (Rule 11 colloquy shows defendant waived his appellate rights knowingly and voluntarily).

---

[1] Odachyan argues that the district court used the wrong amount as the loss figure, erred in not granting a downward adjustment for minor role, erred in granting an upward adjustment for use of sophisticated means, and imposed a sentence that resulted in an unwarranted disparity in comparison to the sentence imposed on another participant in the conspiracy.

Odachyan instead contends that, because the plea agreement allows him to appeal certain issues including restitution and criminal history,[2] and because it provides for the possibility that his conviction might be vacated or reversed on appeal,[3] it should be read to allow him to appeal

---

[2] The plea agreement included the following exception to Odachyan's waiver of his right to appeal:

> Notwithstanding the foregoing, defendant retains any ability defendant has to appeal the amount or terms of any restitution order and the Court's determination of defendant's criminal history category and the conditions of supervised release imposed by the Court, with the exception of the following: conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

[3] The plea agreement provides:

> Defendant agrees that if any count of conviction is vacated, reversed, or set aside, or the sophisticated means enhancement imposed by the Court to which the parties stipulated in this agreement is vacated or set aside, the USAO [U.S. Attorney's Office] may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all of their obligations under this agreement, or (c) leave defendant's remaining

his sentence on other grounds as well. That argument lacks merit. Plea agreements are interpreted using contract principles. *Watson*, 582 F.3d at 986. The plea agreement here contains an integration clause stating there are no understandings between the parties that are not included in the agreement. At a minimum, the integration clause creates a rebuttable presumption that if a right to appeal is not explicitly provided for, as an exception to the general waiver, it does not exist. *See United States v. Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000) ("Standing alone, such a clause would be strong evidence that no implied promises existed–after all, integration clauses establish that the written plea bargain was adopted by the parties as a complete and exclusive statement of the terms of the agreement." (quoting *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir.1986), and collecting additional authorities) (internal quotation marks omitted)). Odachyan's arguments do not overcome this presumption.

That the plea agreement permitted an appeal on certain specified grounds and acknowledged the possibility of reversal or vacatur on appeal does not support the proposition that the defendant is permitted to appeal on other grounds. To the contrary, the fact that a waiver of the right to appeal explicitly sets out certain exceptions supports the proposition that the right to appeal is limited to those exceptions. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (applying the "expressio unius est exclusio alterius" maxim of statutory construction in the context of contract interpretation). The point of making an exception is to depart from the general rule, which in this case is his waiver of the

conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

right to appeal. Odachyan does not contend that his arguments on appeal fall within the exceptions explicitly outlined, and thus they are barred by the general waiver.

The language of the waiver encompasses Odachyan's right to appeal on the other grounds he has attempted to raise, and the waiver was knowingly and voluntarily made. We therefore dismiss Odachyan's remaining challenges as waived.

**AFFIRMED** in part, **DISMISSED** in part.

REINHARDT, Circuit Judge, concurring:

I agree with the majority that the district judge's statement just prior to imposing the sentence on the defendant does not reach the level of a constitutional violation. That is the only issue regarding the judge's conduct that Odachyan raises on appeal. Specifically, Odachyan does not raise the statutory question whether because of his statement the judge should have been disqualified under 28 U.S.C. § 144 or 28 U.S.C. § 455. For this reason, I do not consider whether the judge's statement requires his disqualification under those statutes. Whether it does or not, however, in my view the statement was clearly improper.

Petros Odachyan, an Armenian immigrant, pled guilty to conspiracy to commit health care fraud. At sentencing, the district judge prefaced his choice of an above-guidelines sentence with the following statement:

> I am in constant wonder and amazement why it is so many people come to this country seeking a better life and then prey on this government's institutions as their own personal piggybanks and then direct the court to look at the terrible conditions from which they came as somehow an excuse or mitigating factor.

The majority is correct that this statement was likely made in response to Odachyan's sentencing memorandum, which highlighted, as mitigating factors in sentencing, his childhood in Armenia, his brother's death, an earthquake, food shortages, and his eventual immigration to the United States. The context does not, however, make the statement any more acceptable. On the contrary, the statement is wholly inappropriate and particularly when made in connection with the sentencing of a defendant.

First, the statement demonstrates an approach to sentencing adverse to the instruction of 18 U.S.C. § 3553. That section provides that a sentencing judge must make an individualized determination regarding the appropriate sentence for each person to come before him. It is the judge's duty to consider the "nature and circumstances" of the specific offense and the "history and characteristics" of the particular defendant. 18 U.S.C. § 3553(a)(1); *see also United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985) ("[T]he concept of individualized sentencing is firmly entrenched in our present jurisprudence."). The district judge's statement in this case, far from being a signal of an individualized determination, has no purpose but to inform the defendant that his sentencer considers him to be one of those

immigrants who come to this country and prey on its institutions and that the judge will sentence him in that light.

Second, the judge's remarks are particularly inappropriate because they are directed at immigrants as a class. The remarks unjustly demean the desire of immigrants to seek a better life, belittle the hardship and persecution they may have experienced in their native land, and suggest that "so many" of *them* are engaged in exploiting this country's institutions rather than contributing to them as immigrants have throughout history. *See Arizona v. United States*, 132 S. Ct. 2492, 2510 (2012) ("The history of the United States is in part made of the stories, talents, and lasting contributions of those who crossed oceans and deserts to come here."). The district judge, as an officer of the court, should avoid the appearance of stereotyping, and refrain from giving voice at sentencing hearings to his personal feelings about members of minority groups, including immigrants, and their connection with crime in general or with various types of crimes in particular. Certainly a judge should not announce those beliefs in connection with the imposition of an above-guidelines sentence.

In sum, the district judge's statement, although not rising to the level of a constitutional violation, has no place at a sentencing hearing, both because it is contrary to the requirement that a judge sentence on an individual basis and because it lends the appearance of stereotypical thinking regarding alienage or membership in a particular racial, ethnic, or religious group. Judges should forgo making such statements at all times but especially when judging the conduct of individuals in the course of criminal proceedings.