**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JIMMY TORRES, *Defendant-Appellant.* | No. 14-10210 D.C. No. 2:12-cr-00154-KJD-GWF-1 OPINION |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, Senior District Judge, Presiding

Argued and Submitted December 8, 2015
San Francisco, California

Filed July 14, 2016

Before: Kim McLane Wardlaw, William A. Fletcher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

**SUMMARY**[*]

**Criminal Law**

The panel affirmed the district court's denial of a motion to suppress evidence of a handgun found during an inventory search in the air filter compartment of a vehicle operated by the defendant, vacated his sentence, and remanded for resentencing.

The panel held that Las Vegas Metropolitan Police Department officers' decision to impound the vehicle was permissible under the Fourth Amendment because it was consistent with LVMPD policy and served legitimate caretaking purposes: to promote other vehicles' convenient ingress and egress to a parking area, and to safeguard the car from vandalism or theft.

The panel held that the district court's conclusion that an officer's search of the air filter compartment was authorized by LVMPD policy is not clearly erroneous. The panel held that the LVMPD inventory search policy appears to have been reasonably "designed to produce an inventory," and ensures sufficient uniformity to protect the owners and occupants of impounded vehicles from the risk that officers will exercise discretion in performing an inventory search only when they suspect they will uncover the fruits of criminal activity. The panel held that in fulfilling his duty to search "all containers," the officer acted within the parameters of LVMPD policy when he unlatched the air filter

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

compartment, and that the inventory search did not violate the Fourth Amendment. The panel rejected the defendant's due process challenge to the district court's order adopting and accepting the magistrate judge's recommendation that the motion to suppress be denied.

Based on the government's concession, the panel assumed without deciding that *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the Armed Career Criminal Act's residual clause is unconstitutionally vague, nullifies the identically worded residual clause in U.S.S.G. § 4B1.2(a)(2). The panel therefore accepted the government's concession that the district court sentenced the defendant to a provision in the Sentencing Guidelines that is unconstitutionally vague, which renders the sentence "illegal" such that the defendant's waiver in his plea agreement does not bar this appeal. Because the government agrees that the defendant's prior convictions do not justify imposition of U.S.S.G. § 2K2.1(a)(2)'s crime-of-violence enhancement absent the residual clause, the panel vacated the sentence and remanded for resentencing.

---

## COUNSEL

Rachel Korenblat (argued), Alina Maria Shell and Amy B. Cleary, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Federal Public Defender's Office, Las Vegas, Nevada; for Defendant-Appellant.

Elizabeth O. White (argued), Appellate Chief; Camille W. Damm, Assistant United States Attorney; Daniel G. Bogden, United States Attorney; United States Attorney's Office, Reno, Nevada; for Plaintiff-Appellee.

## OPINION

MURGUIA, Circuit Judge:

Jimmy Torres appeals the district court's denial of his motion to suppress evidence of a handgun that was found during an inventory search in the air filter compartment of a vehicle occupied by Torres. Torres, who has a criminal history that included previous felony convictions, was charged with one count of unlawful possession in violation of 18 U.S.C. § 922(g)(1). He entered a guilty plea pursuant to a plea agreement in which he reserved the right to appeal the denial of his suppression motion. Torres now appeals that denial as well as his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the denial of Torres's motion to suppress, but vacate Torres's sentence and remand for re-sentencing in light of the conceded unconstitutionality of section 2K2.1(a)(2) of the U.S. Sentencing Guidelines.

## BACKGROUND

On April 24, 2012, Las Vegas Metropolitan Police Department ("LVMPD") officers responded to a call from dispatch regarding a domestic battery occurring in a moving car in Las Vegas, Nevada. An individual had called 911 to report a male driver pulling the hair of a female passenger. The caller told dispatch that the vehicle had turned into a

private apartment complex, at which point the caller lost sight of the car.

Officer Jason Evans was the first to arrive at the complex, where he observed a Saturn Vue matching the 911 caller's description in the parking lot with two occupants, a male driver—later identified as Torres—and a female passenger named Cara Young. Officer Joseph Donaldson arrived on the scene shortly thereafter. The vehicle was found near a red zone—*i.e.* a designated no-parking-or-stopping area. According to officers, the car had been stopped in the middle of the parking lot and backed up toward the curb, with vehicles parked in stalls perpendicularly to it on both sides.

When Officer Evans approached the driver's side of the vehicle, he smelled the odor of alcohol on Torres's breath. Evans decided to investigate a possible driving-under-the-influence ("DUI") offense and had Torres exit the vehicle. Evans administered two field sobriety tests to Torres, which he failed. Consequently, Evans arrested Torres for DUI and placed him, in handcuffs, in the back of the patrol vehicle. Evans conducted a records check on Torres that revealed he was a convicted felon. It was also determined that the passenger, Young, did not have a valid driver's license. Although she told officers that the car was hers, the registration had apparently lapsed.[1] Neither Torres nor

---

[1] A subpoena was later served on the Nevada Department of Motor Vehicles to produce the records regarding the car, which included documents obtained from the California Department of Motor Vehicles. The California records identify Young as the last registered owner. According to the Nevada records, there was no owner. Citifinancial Auto was also listed as a lienholder on the vehicle for the Vue's previous owner; Citifinancial Auto's listed address is a P.O. Box in Texas.

Young lived at the apartment complex. Accordingly, the officers decided to impound the car.

Officer Donaldson performed an inventory search of the vehicle and prepared a departmental Vehicle Impound Report. The impound report contains a list of 51 "features" and requires the officer to circle the items applicable to the subject vehicle. The features to be checked include the engine, battery, and radiator, as well as the registration, radio, type of transmission, and window tinting, among other things. The report also includes space for an officer to note pre-existing damage to the vehicle, and to list any personal property found inside.

Donaldson began his search at the front driver's side door, and proceeded to check the trunk, the passenger's side, and the engine compartment. During his search, Donaldson found a hydraulic press, tools, and rolls of coins, which he noted on the impound report. Donaldson also unlatched the lid of the engine's air filter compartment, where he discovered a Sig Sauer P229 semi-automatic pistol and a holster. Upon locating the handgun, Donaldson stopped the inventory search and called LVMPD's firearms detail. Detective Robert Orth responded to the call and applied telephonically for a warrant to seize the gun. A records check was conducted on the firearm, which revealed that it had been stolen during a burglary earlier that day.

The United States Attorney for the District of Nevada filed an indictment charging Torres with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). Torres filed a motion to suppress evidence of the handgun on the grounds that it was the product of an unconstitutional search and seizure. A magistrate judge

conducted an evidentiary hearing on the motion to suppress at which Officer Evans, Officer Donaldson, and Detective Orth testified. Officers Evans and Donaldson testified that searching the air filter compartment is standard practice within the LVMPD, and that people commonly hide property such as money, narcotics, and weapons in automobile engine compartments. Officer Donaldson further stated that he searched the air filter because he had found contraband in engine compartments in the past. After the hearing, the magistrate judge issued a report containing findings of fact and a recommendation that Torres's motion be denied. The magistrate judge noted in closing that "[t]he search of the air cleaner box in this case may be at the boundary of what may be permissibly searched during an inventory search. It does not, however, cross that boundary." Over Torres's timely objections, the district court, in a brief order, adopted the magistrate judge's recommendation and denied Torres's motion to suppress.

Torres subsequently entered a conditional plea of guilty pursuant to a plea agreement that included a waiver of his appellate rights, with the exception that Torres could appeal the denial of his motion to suppress. The district court sentenced Torres to a term of imprisonment of ninety-two months, followed by three years of supervised release. Torres now appeals the district court's denial of his motion to suppress as well as his sentence.

## DISCUSSION

We review the denial of a motion to suppress evidence de novo, and any underlying factual findings for clear error. *United States v. Cervantes*, 703 F.3d 1135, 1138 (9th Cir. 2012). This Court also reviews de novo the question of

whether a defendant's due process rights were violated, *United States v. Ridgway*, 300 F.3d 1153, 1155 (9th Cir. 2002), and whether a pleading defendant has waived his right to appeal. *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016).

Torres argues that the officers' impoundment of the Vue and the inclusion of the air filter compartment in Officer Donaldson's inventory search exceeded the bounds of LVMPD policy and the Fourth Amendment. Torres also challenges the district court's order adopting the magistrate judge's report and recommendation on the ground that the court made factual findings that are inconsistent with those of the magistrate judge, in violation of his due process rights. Lastly, Torres objects that his sentence is unlawful in light of the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the so-called "residual clause" of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague.

## I.

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). The Fourth Amendment proscribes warrantless searches and seizures by law enforcement officers as "*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Cervantes*, 703 F.3d at 1138–39 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Under the "community caretaking" doctrine, police may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized

procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic. *Id.* at 1141. This requirement ensures that impoundments are conducted "on the basis of something other than suspicion of evidence of criminal activity." *Miranda*, 429 F.3d at 863 (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)); *see also Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."). The government bears the burden of establishing that a vehicle's impoundment and search are justified under an exception to the warrant requirement. *Cervantes*, 703 F.3d at 1140–41.

## A.

The LVMPD officers' decision to impound the Vue was permissible under the Fourth Amendment because it was consistent with LVMPD policy and served legitimate caretaking purposes: to promote other vehicles' convenient ingress and egress to the parking area, and to safeguard the car from vandalism or theft.

The LVMPD has two written policies dealing with the impoundment of motor vehicles. Section 5/202.20 of the LVMPD policy manual provides, in pertinent part:

> The arresting officer has the option of allowing the arrestee, provided they are the registered owner, to leave his vehicle parked or have it towed if the following conditions exist:
>
> 1. The arrestee is 18 years or older.

>   2.  The arrestee is not under the influence
>       of intoxicating liquors or drugs.
>
>   3.  The vehicle is parked legally on the
>       roadway or private property open to
>       the public.
>
>   4.  The vehicle is not needed for
>       evidence.

> If the arrestee is not the registered owner, the
> officer will attempt to notify the registered
> owner that the vehicle in question will be
> towed if they do not come to the scene and
> take custody of their vehicle. The registered
> owner would be advised they need to respond
> in a timely manner (generally 30 minutes).

Section 5/204.06 of the police manual also specifies twelve circumstances under which a vehicle may be impounded, including:

>   1.  Whenever a driver is arrested and is [*sic*]
>       no physical or mental condition to turn the
>       vehicle over to the custody and care of a
>       relative or friend. . . .
>
>   6.  When ownership and rightful possession
>       by the driver is in doubt. . . .
>
>   12. If there is not a licensed driver in the
>       vehicle and it is not legally parked.

And, section 5/204.06 states, "It is the policy of this department that to impound a vehicle without cause is strictly forbidden."

The LVMPD policies that canalize law enforcement officers' decision whether to impound a vehicle are sufficiently standardized to satisfy the dictates of the Fourth Amendment. *See Miranda*, 429 F.3d at 865 ("The decision to impound must be guided by conditions which 'circumscribe the discretion of individual officers' in a way that furthers the caretaking purpose." (quoting *Bertine*, 479 U.S. at 376 n.7)). Sections 5/202.20 and 5/204.06 of the LVMPD policy manual enumerate a limited set of circumstances in which a vehicle may be towed, and outline procedures to be followed prior to impoundment that comport with the police's role as "caretakers" of the streets.

In this case, the officers' impoundment of the Vue also complied with the LVMPD policy manual. Officers Evans and Donaldson testified that there was legitimate confusion regarding the identity of the Vue's owner. Although Young claimed that the vehicle was hers, the Nevada DMV computer records did not list her as the registered owner, apparently because the Vue was last registered in California. The Vue's California registration had also lapsed. The evidence suggests that there was no information available to the officers on scene that clearly identified Young—or anyone else—as the registered owner of the Vue. In any event, the officers could not have discharged the Vue to Young because they knew that she did not have a valid driver's license at the

time.[2]  Thus, the officers' decision to impound the vehicle was consistent with LVMPD policies.  *See Bertine*, 479 U.S. at 375 (sanctioning routine impounds where authorized by standardized police procedures).

Moreover, towing the Vue from the parking lot under the circumstances furthered a valid caretaking purpose.  Officers testified that the vehicle was positioned in a manner that could impede emergency services to the apartment complex. The Vue was also blocking other vehicles from accessing or exiting the parking stalls on either side of it.  *See Cervantes*, 703 F.3d at 1141 ("[P]olice officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." (quoting *Miranda*, 429 F.3d at 864)). Because neither Torres nor Young could legally drive the vehicle, the officers could not allow either of them to move the car to a less obtrusive location.  *Cf. United States v. Caseres*, 533 F.3d 1064, 1074–75 (9th Cir. 2008) (finding that police lacked authority to impound a car where the car

---

[2] Torres argues that if officers determined that Young was the registered owner of the Vue, they could have offered her the opportunity to contact someone to move the vehicle in lieu of impounding it, thus vitiating the need to conduct an inventory search.  However, neither the Fourth Amendment nor LVMPD policy compels officers to exhaust alternatives before they may impound a vehicle.  *See Bertine*, 479 U.S. at 373–74 (holding that inventory search incident to impoundment was reasonable even though defendant could have made other arrangements for the safekeeping of his property); *United States v. Penn*, 233 F.3d 1111, 1116 (9th Cir. 2000) ("[T]he police had no Fourth Amendment obligation to offer the driver an opportunity to avoid impoundment.").  "[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment *requires* such steps . . . .The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Bertine*, 479 U.S. at 374 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)).

was lawfully parked on the street two houses away from the defendant's residence, and there was no showing that the car was likely to be stolen, be broken into, or impede traffic). In addition, the arresting officers had a reasonable interest in preventing the vehicle from being a target for vandalism or theft in the parking lot of an apartment complex where neither Torres nor Young lived. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1025 (9th Cir. 2009) (holding that impoundment was warranted under the community caretaking doctrine where the defendant was arrested in a drugstore parking lot and would have been unable to "return to the drugstore to retrieve his car," and leaving the car there "would have made it an easy target for vandalism or theft"); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993). Under the circumstances, we conclude that impounding the Vue was permissible under the Fourth Amendment.

## B.

Once a vehicle has been legally impounded, the police may conduct an inventory search without a warrant. *Cervantes*, 703 F.3d at 1141 (citing *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976)). Like the decision to impound, the scope of the inventory search must conform to the standard procedures of the local police department. *See Bertine*, 479 U.S. at 375. Although a policy may accord the searching officer significant discretion to determine whether a particular recess should be searched, the policy cannot constitutionally authorize officers to "rummag[e]" for evidence of criminal activity under the guise of logging an inventory. *Wells*, 495 U.S. at 4; *see also Cervantes*, 703 F.3d at 1141.

The policy manual and the officers' unchallenged testimony established that there is a policy in place at LVMPD requiring officers to perform a complete inventory search of a vehicle and its contents when it is impounded. Specifically, Section 5/204.06 states that "[i]mpounding officers must thoroughly search vehicles and containers located therein per 5/200.04." It also requires that "[p]ersonal property must be inventoried on the Vehicle Impound Report." Section 5/200.04 provides:

> It is the policy of this department to conduct motor vehicle searches that are both legal and thorough. Searches are conducted in strict observance of the constitutional rights of the owner and occupants of the vehicle, and with due regard for the safety of all officers, citizens, and property involved.
>
> . . .
>
> An inventory is not a search for evidence of crime, but is justified to protect an owner's property while it is in the custody of the police, to ensure against claims of lost or stolen property, and to guard the police from danger.
>
> When a vehicle is lawfully impounded (See 5/204.06), an officer shall conduct an inventory search of that vehicle and containers found therein and report all personal property on the LVMPD 503, Vehicle Impound Report.

The manual indicates that "*all* containers within the vehicle must be inventoried . . . and their contents must be inventoried also." No containers are specifically designated off-limits by LVMPD policy. Thus, the LVMPD policy plainly contemplates that inventory searches of impounded vehicles will encompass closed spaces, and affords officers little to no discretion in what areas of the vehicle must be searched.

This policy appears to extend to the engine cabin of a vehicle; the manual requires impounding officers to itemize personal property found during an inventory search on a standardized Vehicle Impound Report that lists the engine, battery, and radiator among the 51 features to be checked. Officers Evans and Donaldson also testified that their standard practice when inspecting the engine cabin is to search the air filter compartment, even though they do not actually verify the presence of an air filter on the impound report. The district court's conclusion that Officer Donaldson's search of the air filter compartment was authorized by LVMPD policy is therefore not clearly erroneous.

This case thus turns on whether it was reasonable for Officer Donaldson to unlatch the air filter box in the engine compartment as part of the inventory search. We hold that it was. The Supreme Court has repeatedly approved police policies that permit inventory searches of closed compartments within automobiles. In *South Dakota v. Opperman*, the Supreme Court held that it was reasonable to open an unlocked glove compartment as part of an inventory search in order to safeguard the owner's personal property, "to which vandals would have had ready and unobstructed access once inside the car." 428 U.S. at 376 n.10. Similarly,

in *Colorado v. Bertine* the Court upheld an inventory search of a backpack found in a van and of containers found inside the backpack. 479 U.S. at 369, 372–73. The *Bertine* Court explained that inventorying the contents of the backpack was consistent with the police's caretaking role because, "[b]y securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or others that may have been posed by the property." *Id.* at 373.

In *Cady v. Dombrowski*, 413 U.S. 433 (1973), the Supreme Court likewise found an automobile inventory search was justified by the legitimate caretaking purpose of safeguarding the "general public who might be endangered if an intruder removed a revolver from the . . . vehicle." *Id.* at 447. The defendant in *Cady* was a member of the Chicago police force who was severely injured during a car accident. *Id.* at 435–36. After the defendant's disabled vehicle was lawfully towed to the police station, the officers—mistakenly believing that Chicago police officers were required by regulation to carry their service revolver at all times—undertook a search of the vehicle in order to locate the defendant's missing firearm. *Id.* at 436–47. The searching officer found fruits of a crime in the trunk of the impounded car. *Id.* at 437–38.

In upholding the constitutionality of the search, the Supreme Court observed that it was the standard procedure of the local police department to check impounded vehicles for firearms in order to protect public safety. *Id.* at 437, 443, 447. The Supreme Court held it was constitutionally reasonable to believe that someone could happen upon the

revolver if it had been left in the defendant's trunk, because the car was parked outside in a lot several miles from the police station without a guard posted over it. *Id.* at 443, 447. The Court concluded by stating that "[w]here, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." *Id.* at 448.

The same is true in this case. Officer Donaldson's search of the engine cabin was motivated, at least in part, by concerns for the safety of the police or others. *See Bertine*, 479 U.S. at 373. The air filter compartment was obviously large enough to hold a firearm, and could be opened by lifting the hood and releasing the latches on the box. Officer Donaldson testified that he commonly checks the air filter compartment because, based on his training and experience, "criminals" hide contraband there such as narcotics and weapons. In light of this uncontradicted evidence that firearms and other weapons have been located in air filter compartments in the past, it is reasonable for the LVMPD to maintain an inventory search protocol that encompasses areas where weapons may be stored in a manner reasonably accessible to the owners of vehicles in the process of being impounded, or others who may have access to the vehicle after it is impounded. Officer Donaldson's search of the air filter compartment in this case was justified by the need to "protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Cady*, 413 U.S. at 443; *accord Bertine*, 479 U.S. at 373 & n.5 (finding a valid public safety purpose justified an inventory search where department policy required inventory searches "in order to check for any dangerous items such as explosives

or weapons," and an "officer had testified that he had found such items in vehicles").

In sum, the LVMPD inventory search policy appears to have been reasonably "designed to produce an inventory," and ensures sufficient uniformity to protect the owners and occupants of impounded vehicles from the risk that officers will exercise discretion in performing an inventory search only when they suspect they will uncover the fruits of criminal activity. *Wells*, 495 U.S. at 4 (explaining that officers may not conduct inventory searches solely to discover evidence of criminal activity). Accordingly, the purposes underlying the requirement of a process to discourage inventory searches from becoming a "ruse for a general rummaging" are satisfied with respect to the LVMPD policy at issue. *See id*. In fulfilling his duty to search "all containers," Officer Donaldson acted within the parameters of LVMPD policy when he unlatched the air filter compartment. For this reason, the inventory search did not violate the Fourth Amendment, and the district court properly denied Torres's motion to exclude evidence of the firearm.

## C.

Torres also raises a due process challenge to the district court's order accepting the magistrate judge's recommendation and denying Torres's motion to suppress. Torres argues that, in conducting a de novo review of the magistrate judge's report, the district court engaged in improper fact-finding. In particular, Torres contends that the district court's statement that "[a]ll officers testified that a search of the air filter box was standard for every inventory search, particularly in light of their experience that personal items were frequently found in air filter boxes," was

inconsistent with the officers' testimony that they had previously discovered contraband in air filter compartments, and the magistrate judge's finding that "[t]he air cleaner box . . . is not a place one would reasonably expect a vehicle owner to store personal property."

However, the district court adopted and affirmed the magistrate judge's recommendation in full. Thus, the magistrate judge's findings are the findings of the district court, whether or not specifically restated in the district court's order. This practice does not violate due process. *United States v. Raddatz*, 447 U.S. 667, 680–81 & n.7 (1980) (discussing 28 U.S.C. § 636(b)(1)). In any event, it requires minimal effort to read the orders as consistent. The "personal items" that the district court noted had been "frequently found in air filter boxes" may well have referred to firearms that pose a threat to officers.

## II.

Torres also challenges his sentence on the grounds that the district court incorrectly enhanced his offense level under section 2K2.1 of the U.S. Sentencing Guidelines, in light of the Supreme Court's June 2015 decision in *Johnson v. United States*, 135 S. Ct. at 2557–60. *Johnson* held that the ACCA's catch-all "residual clause," *see* 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague because it failed to specify the crimes that fell within its scope sufficiently clearly to satisfy the dictates of due process. *Johnson*, 135 S. Ct. at 2557–58, 2563. Torres argues that section 2K2.1(a)(2)'s identically worded residual clause is likewise unconstitutional.

Because Torres did not object at sentencing, we will generally reverse only if we find plain error in his sentence.

*United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010); Fed. R. Crim. P. 52(b). "However, we are not limited to this standard of review when," as here, "we are presented with a question that 'is purely one of law' and where 'the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.'" *Evans-Martinez*, 611 F.3d at 642 (quoting *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009)).

## A.

After the district court denied his motion to suppress, Torres pleaded guilty to one count of being a felon in possession of a firearm pursuant to a conditional plea agreement. In his plea agreement, Torres stipulated to a base offense level of 24 under section 2K2.1(a)(2) of the Guidelines, which provides for an enhancement in unlawful firearms cases "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence." *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (U.S. Sentencing Comm'n 2015). The Guidelines define a "crime of violence" in section 2K2.1's career offender provision equivalently to the phrase "violent felony" in the ACCA's residual clause, as an offense that, "by its nature, presents a serious potential risk of physical injury to another."[3] *Compare id.* §§ 2K2.1(a)(2) cmt. 1, 4B1.2 cmt. 1, *with* 18 U.S.C. § 924(e)(2)(B)(ii). We have historically interpreted and applied the two sections in a "parallel manner." *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010) (citation omitted).

---

[3] Section 2K2.1(a)(2) incorporates by reference the definition for "crime of violence" set forth at § 4B1.2, which governs career-offender sentences generally. U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) cmt. 1.

The district court concluded that, under existing law, Torres had previously committed two predicate "crimes of violence" for purposes of section 2K2.1(a)(2)'s career offender provision: two counts of felony flight from law enforcement.[4]    Accordingly, the district court calculated Torres's sentence based on an adjusted offense level of 23—reflecting, among other things, the crime-of-violence enhancement and a 3-level reduction for acceptance of responsibility.  Paired with Torres's criminal history category (VI), the district court sentenced Torres to a 92-month term of incarceration, which was at the low end of Torres's Guidelines range of 92–115 months.    Assuming Torres received the same acceptance-of-responsibility reduction, but for the crime-of-violence enhancement Torres's adjusted offense level would have been 13, and his Guidelines range would have been 33–41 months.    *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(6)(A).

## B.

Before we can decide whether Torres is entitled to relief on his sentencing claim, we must first determine whether his appeal is precluded by his plea agreement, in which Torres

> knowingly and expressly waive[d]: (a) the right to appeal any sentence imposed within or below the applicable guidelines range as determined by the Court, with the exception of  preserving  the  right  to  appeal  a

---

[4] In *Sykes v. United States*, 131 S. Ct. 2267 (2011), the Supreme Court held that a prior conviction under state law for fleeing law enforcement was a violent felony for purposes of an ACCA enhancement.  *Id.* at 2273–74, 2277.  *Johnson* overruled *Sykes*.  135 S. Ct. at 2563.

> determination that the [he] qualifies as an Armed Career Criminal;[5] (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742;[6] and (c) the right to appeal any other aspect of the conviction or sentence.

Although we retain jurisdiction over an appeal by a defendant who has signed an appellate waiver, we will not ordinarily exercise that jurisdiction to review the merits of an appeal if the defendant has validly waived his right to appeal. *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc).

Standard principles of contract law guide our interpretation of the terms of a plea agreement. *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005). We will thus enforce an appeal waiver contained in a plea agreement if "the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004) (citing *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996)). The analogy between plea agreements and private contracts is imperfect, however, because the Constitution imposes a floor below

---

[5] Torres also reserved the right to appeal the denial of his suppression motion.

[6] Section 3742 permits appellate consideration of whether a defendant's sentence was imposed in violation of law, was the result of an incorrect application of the sentencing guidelines, is outside the applicable guideline range, or was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. 18 U.S.C. § 3742(e).

which a defendant's plea, conviction, and sentencing may not fall.  For example, an appeal waiver does not deprive a defendant of a constitutional ineffective assistance of counsel claim.  *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005).  A waiver of appellate rights will also not apply if a defendant's sentence is "illegal," which includes a sentence that  "violates the Constitution."  *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (citing *United States  v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986)); *accord United States v. Odachyan*, 749 F.3d 798, 801 (9th Cir. 2014); *United States v. Johnson*, 67 F.3d 200, 203 n.6 (9th Cir. 1995).

It is an open question whether § 4B1.2(a)(2)'s residual clause remains valid in light of *Johnson*, although several circuits, including ours, have signaled concern about its constitutionality.  *See United States v. Willis*, 795 F.3d 986, 996 (9th Cir. 2015); *see also United States v. Maldonado*, No. 12-3487-CR, 2016 WL 229833, at *2 & n.1 (2d Cir. Jan. 20, 2016) (collecting cases); *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015); *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015).  Here, the Government asserted in its supplemental briefing that it believes *Johnson* applies to the Sentencing Guidelines.  *See* Government's Proposed Suppl. Answering Br. 11.  Based on the Government's concession, we assume without deciding that *Johnson*'s holding nullifies § 4B1.2(a)(2)'s identically worded residual clause.  We therefore accept the Government's concession that the district court sentenced Torres pursuant to a provision in the Guidelines that is unconstitutionally vague.  This renders Torres's sentence "illegal," and therefore the waiver in his plea agreement does not bar this appeal.  *See Bibler*, 495 F.3d at 624.  And, because the government agrees that Torres's prior convictions do not justify the imposition of

§ 2K2.1(a)(2)'s crime-of-violence enhancement absent the residual clause, we vacate Torres's sentence and remand for re-sentencing.

   **AFFIRMED in part; VACATED and remanded in part**.