**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DONALD THOMAS TOSTI,
*Defendant-Appellant*.

No. 12-10067

D.C. No.
3:09-cr-00973-JSW-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
June 14, 2013—San Francisco, California

Filed October 1, 2013

Before: Mary M. Schroeder, Kenneth F. Ripple*,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

* The Honorable Kenneth F. Ripple, Senior Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for possessing child pornography.

The panel held that a 2005 search of the defendant's computer at a CompUSA store was lawful because the police officers who conducted it did not exceed the scope of the permissible search already conducted by a private party, and a 2009 search of the defendant's home office was lawful because the defendant's wife had apparent authority, if not actual authority, to consent.

The panel also held that the district court acted within its discretion in imposing a substantively reasonable sentence that accounts for the defendant's age and infirmities.

### COUNSEL

Amitai Schwartz (argued) and Moira Duvernay, Law Offices of Amitai Schwartz, Emeryville, California, for Defendant-Appellant.

Melinda Haag, United States Attorney, and Barbara J. Valliere, Assistant United States Attorney, San Francisco, California; Julia Malkina (argued), United States Department of Justice, Washington, D.C., for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

CALLAHAN, Circuit Judge:

Defendant Donald Thomas Tosti ("Tosti") was convicted of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). He appeals from the district court's denial of his multiple motions to suppress evidence derived from both the 2005 search of his computer at a CompUSA store and the 2009 search of his home office. Tosti also challenges his 96-month sentence as unreasonable in light of his advanced age and poor health. We hold that the 2005 search was lawful because the police officers who conducted it did not exceed the scope of the permissible search already conducted by a private party, and the 2009 search was lawful because Tosti's wife had apparent authority, if not actual authority, to consent. We also hold that the district court properly considered Tosti's age and physical characteristics when it exercised its sentencing discretion. Accordingly, we affirm Tosti's conviction and sentence.

## I

In January 2005, Tosti took his computer to a CompUSA store for service. According to Tosti, "[he] understood that a technician at CompUSA would have temporary custody of the computer, and would inspect it as needed to complete the requested repairs."

Seiichi Suzuki was working on the machine when he discovered pornographic images of children in a sub-folder, which prompted him to contact the police. According to Suzuki, he was "opening various folders and subfolders to look for images," and he and a technician "were randomly

checking what was on the drive folders when [they] eventually encountered images that looked like child pornography." Pursuant to the police report, Suzuki advised the police that "he discovered numerous photographs in the file of naked children and adult men." "He said the photographs depicted many graphic sex scenes of children."

Two detectives, George Schikore and Ed Rudolph, responded to Suzuki's call. Detective Schikore arrived first. When he got to the store, "there were numerous images appearing on the computer monitor in a very small 'thumbnail' format." According to Detective Shikore, he "could tell by looking at the [thumbnail] pictures that they depicted child pornography." Detective Schikore purportedly "directed [Suzuki] to open the images in a 'slide show' format so that they would appear as larger images viewable one by one." Suzuki "opened up the individual images in the 'slide show' format, using keys to move forward or backward as requested by [Detective Schikore]."

Detective Rudolph arrived later and scrolled through the active images on the computer monitor. According to Detective Rudolph, there were "more than two-dozen [t]humbnail view graphical files maximized on the desktop." Detective Rudolph stated that he scrolled through the images on the screen, but also indicated that he could tell even from the thumbnail images that they depicted obvious sexual activity between adults and children.

The detectives seized Tosti's computer. Based on Officer Rudolph's observations, Detective Mojib Aimaq thereafter prepared an affidavit supporting the issuance of a search warrant for Tosti's computer, residence, office and two vehicles registered to Tosti and his wife. A Marin County

magistrate judge issued the warrant, which was executed the following day.

Tosti was eventually arrested on October 16, 2009.[1]  A few days later, on October 20, 2009, Tosti's then estranged wife, Annette Tosti, contacted FBI Special Agent Elizabeth Casteneda.   Ms. Tosti had been married to Tosti for approximately twenty years, during the majority of which time they maintained a residence in San Rafael, California.

Tosti had purportedly asked Ms. Tosti to locate financial records, which were stored in a room inside the Tosti home that Tosti was utilizing as an office. During her search, Ms. Tosti found documents that appeared to contain pornography. She turned those documents and some internal and external hard drives over to Agent Casteneda.  At that time, Ms. Tosti explained to Agent Castaneda that she lived with her husband in the house and that she had full access throughout the residence.  Ms. Tosti also advised Agent Casteneda that she was responsible for cleaning the office.

Two days later, on October 22, 2009, Ms. Tosti again contacted Agent Castaneda and asked her to take several items from the Tosti home.  That same day, Ms. Tosti turned over a Dell computer, several external hard drives, and numerous DVDs.  None of these were password protected or encrypted, and they appeared to contain pornography.

Ms. Tosti signed a "Consent to Search" form authorizing agents to search the items she turned over on October 22. On that form, Ms. Tosti stated, "The above items both my

---

[1] There is no explanation in the record for the lapse of four years without any apparent activity.

husband, Donald Tosti and I use." Agent Casteneda did not see any "signs, extra locks or other indicia" that the home office "was anything other than an area of the residence to which Annette Tosti had common access as she consistently maintained." Tosti's brother-in-law also declared he had not seen any indicia that Ms. Tosti's access to the home office was limited. Tosti nonetheless avers that he and Ms. Tosti had "an explicit agreement that [they] would not enter each other's private work areas without first announcing [themselves] and then getting permission."

Tosti was prosecuted pursuant to a superseding indictment charging him with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). He moved to suppress the evidence seized as a result of the Government's 2005 and 2009 searches. The district court granted in part and denied in part Tosti's motions, suppressing only the first batch of evidence that Ms. Tosti had turned over to Agent Casteneda on October 20, 2009. Tosti was subsequently found guilty after a bench trial on stipulated facts.

Prior to sentencing, the probation officer issued a Pretrial Sentencing Report ("PSR") recommending that Tosti be sentenced to 96 months in prison and five years supervised release and be ordered to pay $50,000 in restitution. The guidelines sentencing range was 108–135 months.

At sentencing, the district court engaged in a lengthy colloquy with Tosti. The court discussed, among other things, the guidelines and their advisory nature. The court also noted that, in the instant case, it agreed with the applicable guidelines, in part because "this child pornography proliferation on the Internet and the computers, downloads, has become an increasingly serious problem, one that

Congress properly took notice of." The court made clear that it understood it was required to consider the nature and circumstances of the offense and the history and characteristics of the individual defendant. It recognized that its duty was to impose a sentence "sufficient but not greater than necessary" and to "avoid unwanted disparities and to afford adequate deterrence."

Tosti argued, among other things, that the district court should exercise its discretion to apply a downward variance from the guidelines because of his advanced age and infirm medical condition. Tosti was 76 years old at the time of sentencing. He had suffered four heart attacks and had undergone stenting of his femoral arteries and other lower extremity vessels. He suffered from diabetes, hypertension, heart disease, thyroid disease, and kidney disease, and was taking approximately 22 medications daily. Tosti sought to be sentenced to time served (nine weeks), a lifetime of supervised release, home confinement, and community service. He also sought to pay $100,000 in restitution. The district court addressed Tosti's arguments at sentencing, recognizing that Tosti was older than most defendants and explaining that it had considered Tosti's physical and medical conditions in crafting its sentence.

The district court noted that Tosti "hit the jackpot" and "pushed the[] aggravating sentencing factors to the limit" based on (a) the sheer volume of pornography he had collected, (b) his interaction with and manipulation of the images, and (c) the sadistic nature of the images. Nonetheless, the court varied downward from the guidelines and imposed the below-guidelines sentence of 96-months recommended in the PSR. Tosti filed a timely notice of appeal from his conviction and sentence.

## II

We review de novo the denial of a motion to suppress brought on Fourth Amendment grounds. *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006). Factual findings are reviewed for clear error. *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002). Sentencing decisions are reviewed for an abuse of discretion. *United States v. Rangel*, 697 F.3d 795, 800 (9th Cir. 2012).

## III

### A.

We first consider Tosti's argument that the warrantless searches of his computer at CompUSA were unlawful and that the fruits of those searches must therefore be suppressed. We disagree with his contention.

The 2005 searches derive from Suzuki's original private search of Tosti's computer after Tosti voluntarily relinquished it to CompUSA. The Fourth Amendment's proscriptions on searches and seizures are inapplicable to private action. *See United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984). "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* at 117. Instead, the Fourth Amendment "is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id.* "The additional invasions of respondents' privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* at 115; *see also id.* at 119 ("The agent's viewing of what a private party had

freely made available for his inspection did not violate the Fourth Amendment.").

In *Jacobsen*, employees of a private freight carrier were inspecting a damaged package when they observed a white powdery substance. *Id.* at 111. They opened the package and found a tube containing a series of plastic bags filled with that powder. *Id.* The employees called the Drug Enforcement Administration (the "DEA"), placed the bags back into the tube, and then placed the tube back into the box. *Id.* The first federal agent on the scene saw that the tube was slit open, removed the bags and saw the white powder. *Id.* He then field tested the powder, identifying it as cocaine. *Id.* at 112.

The Court held that, among other things, "the removal of the plastic bags from the tube and the agent's visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search." *Id.* at 120. Since the DEA's search "infringed no legitimate expectation of privacy" it "was not a 'search' within the meaning of the Fourth Amendment." *Id.*

Pursuant to *Jacobsen*, neither Detectives Schikore nor Rudolph "searched" Tosti's photos for Fourth Amendment purposes because Suzuki's prior viewing of the images had extinguished Tosti's reasonable expectation of privacy in them. Tosti admitted that by voluntarily taking his computer to CompUSA for repairs he "understood that a technician at CompUSA would have temporary custody of the computer, and would inspect it as needed to complete the requested repairs." Indeed, Tosti appears to concede that he had no reasonable expectation of privacy in the thumbnail version of the pictures that Suzuki had already viewed. Tosti instead argues that detectives exceeded the scope of Suzuki's private

search when: (1) Detective Shikore directed Suzuki to enlarge the images and then viewed the photos in slideshow format; and (2) Detective Rudolph scrolled through the thumbnail photos.

The district court explicitly found that Detective Shikore had viewed only those photos Suzuki had already viewed. Tosti does not contest that conclusion here, nor does the record contradict it. The only question with respect to Detective Shikore, then, was whether Tosti was entitled to suppression because Detective Shikore purportedly viewed those pictures not just as thumbnails, but also as enlarged pictures in a slideshow format.

Even assuming that Detective Shikore viewed enlarged versions of the thumbnails, he still did not exceed the scope of Suzuki's prior search because Suzuki and both detectives testified that they could tell from viewing the thumbnails that the images contained child pornography. That is, the police learned nothing new through their actions. Since Suzuki – a private individual to whom Tosti had voluntarily delivered his computer with the explicit understanding that he would inspect the system to complete the repairs – could discern the content of the photos, any expectation of privacy Tosti had in those pictures was extinguished. Whether detectives later enlarged them (or the size of the enlargements, for that matter) is thus irrelevant.

Similarly, Tosti is not entitled to suppression on the basis that Detective Rudolph scrolled through the thumbnails. Again, scrolling through the images Suzuki had already viewed was not a search because any privacy interest in those images had been extinguished. Moreover, Detective Rudolph did not view any more photos than Suzuki had viewed. Tosti

agreed that: (1) there was no "evidence in the record to suggest that either Detective Shikore . . . or Detective Rudolph viewed any file folder or images other than the file folder and images opened by Mr. Suzuki"; and (2) the "crux of Dr. Tosti's argument [was] that the detectives allegedly asked Mr. Suzuki to enlarge the images and subsequently scroll[ed] through the file folder." The district court explicitly held "that on the facts presented, this is not a situation where the Detectives reviewed more file folders or images than Mr. Suzuki had viewed." The district court's factual finding is not clearly erroneous.[2]

The cases on which Tosti relies, *Walter v. United States*, 447 U.S. 649, 662 (1980), and *United States v. Young*, 573 F.3d 711, 713 (9th Cir. 2009), are not to the contrary. First, in *Walter*, private employees of a firm that received a misdirected shipment called the FBI after they opened the boxes and found containers suggestive of sexually explicit films. 447 U.S. at 651–52. Without a warrant, agents extracted the films from the containers and viewed them on a projector. *Id.* at 652. The Supreme Court reversed the district court's denial of a motion to suppress because the FBI was not entitled to search the films, which had not been viewed by the private individuals, without a warrant. *Id.* at 658–60.

That case is distinguishable for at least two reasons. First, the private individuals inspecting the package in *Walter* were not its intended recipients. Rather, they were employees of a third-party entity that the defendant never intended to have

---

[2] We need not, and do not, reach the question whether examining more files within the same electronic folder already searched by a private individual would constitute a search for Fourth Amendment purposes.

access to his films.  Here, to the contrary, Tosti voluntarily turned over his computer to CompUSA with the understanding that its employees would inspect the system in furtherance of its repair.  Second, the content of the films in *Walter* was not apparent from the private inspection.  In that case no private individual had viewed the films; nor could they have done so without a projector.  Given the small size of the film strips, their subject matter could not be determined with the naked eye.  In the instant case, by contrast, when Suzuki initially viewed Tosti's pictures, their content was discernable, and any expectation of privacy Tosti had in those photographs was extinguished.

*Young* also provides no support for Tosti's position.  In *Young*, a private security guard discovered a gun in the defendant's backpack, which the defendant had left in his hotel room.  573 F.3d at 714.  Security contacted the police and took an officer to the defendant's room.  *Id.* at 715.  The guard then held open the backpack so that police could see the weapon.  *Id.*  A panel of this court affirmed the suppression of that evidence after analogizing the hotel room to a home and reasoning that "[a] guest has a legitimate and significant privacy interest in the room's contents, and does not lose his expectation of privacy against unlawful government intrusions into his closed briefcase or the contents of his computer hard drive when hotel staff sees the briefcase, laptop, or other belongings while cleaning the room or changing a light bulb."  *Id.* at 721.  Unlike Tosti, who voluntarily took his computer to CompUSA to be inspected, the defendant in *Young* had not voluntarily relinquished his backpack to a third party and had not consented to any such third party inspecting his property.

**B.**

We also reject Tosti's assertion that the district court erred in failing to suppress the evidence seized from his home office and computer media in 2009. Tosti contends that Ms. Tosti had neither actual nor apparent authority to consent to those searches. Regardless of whether Ms. Tosti had actual authority, the district court properly determined that she had the apparent authority to grant the police access to the materials.

"It is well established that a person with common authority over property can consent to a search of that property without the permission of the other persons with whom he shares that authority." *United States v. Murphy*, 516 F.3d 1117, 1122 (9th Cir. 2008). "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993). "To establish apparent authority, the Government must show that: (1) [officers] believed an untrue fact that they used to assess . . . control . . . ; (2) it was objectively reasonable for [officers] to believe that the fact was true; and (3) if the fact was true, [the third party] would have had actual authority to consent." *United States v. Enslin*, 327 F.3d 788, 793–94 (9th Cir. 2003). "[T]he doctrine is applicable only if the facts believed by the officers to be true would justify the search as a matter of law." *Welch*, 4 F.3d at 764.

The Tostis were married and had resided in their shared residence for over twenty years. Ms. Tosti advised Agent Casteneda that both she and Tosti used the computer and

storage devices located in their home. Even if Ms. Tosti's representations were not true, there were no objective indications that Ms. Tosti's access to the office was limited. There were no locks or other signs that Tosti tried to keep his wife out of the office. Also, the computer and electronic media were neither password protected nor encrypted. The fact that Tosti now contests Ms. Tosti's actual authority does not undermine the district court's finding of apparent authority. There was no indication at the time of the search that Agent Casteneda was on notice that Ms. Tosti might not have the authority to consent.[3] All objective indicia supported Agent Casteneda's conclusion that Ms. Tosti's consent was sufficient, and the district court properly denied Tosti's motion to suppress.

## C.

Finally, we address Tosti's claim that the district court abused its discretion by imposing a substantively unreasonable sentence that failed to account for his advanced age and infirmities. According to Tosti, his situation is extraordinary and unusual because he is 76 years old, in poor health, and poses little or no risk to either reoffend or to act on his impulses. Tosti argues that it was within the court's discretion to impose minimal prison time.

Although the district court could have decided on a lesser sentence, it nonetheless acted within its discretion in

---

[3] Even if Agent Casteneda knew that the couple were estranged – a matter that is not clear from the record – Ms. Tosti continued to live in the home and to have access to the devices she turned over to the Government. Accordingly, Agent Casteneda reasonably believed Ms. Tosti had authority.

imposing the below-guidelines sentence that it did. "A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Crowe*, 563 F.3d 969, 977 n.16 (9th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc).

The sentencing guidelines provide:

> Age . . . may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

U.S.S.G. § 5H1.1. "An extraordinary physical impairment may be a reason to depart downward; e.g., in case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4.

The district court properly considered Tosti's age and physical condition at sentencing and imposed a below-guidelines sentence based on the totality of all circumstances

specific to Tosti's case. The district court weighed the various competing considerations with which it was confronted, and it expressly factored in Tosti's physical condition among all of those circumstances. It ultimately acted within its discretion in imposing a reasonable sentence. *See United States v. Green*, 592 F.3d 1057, 1072 (9th Cir. 2010) ("We . . . reject Green's argument that her sentence was unreasonable in light of her age and background; the trial judge expressly took those circumstances into account when imposing her sentence."); *United States v. Seljan*, 547 F.3d 993, 1007 (9th Cir. 2008) ("Seljan argues that the district court did not adequately consider his advanced age. This argument is meritless. The district court acknowledged that Seljan's age and health reduced the likelihood of recidivism, and it addressed Seljan's concern that the 20-year sentence at age 87 was tantamount to life imprisonment.").

## IV

The district court properly denied Tosti's motions to suppress. The agents did not exceed the scope of the prior authorized private search, and Ms. Tosti had apparent authority to consent to the subsequent searches of her residence and Tosti's computer. Moreover, the district court acted within its discretion in imposing a substantively reasonable sentence that accounts for Tosti's age and infirmities.

**AFFIRMED**.