**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SHANE MAURITZ
VANDERGROEN,
*Defendant-Appellant.*

No. 19-10075

D.C. No.
4:18-cr-00133-PJH-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued and Submitted May 13, 2020
San Francisco, California

Filed July 7, 2020

Before: Michelle T. Friedland and Mark J. Bennett, Circuit
Judges, and Jed S. Rakoff,* District Judge.

Opinion by Judge Rakoff

---

*The Honorable Jed S. Rakoff, Senior District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress evidence found during a search that followed a 911 call and the stop of the defendant's car, in a case in which the defendant was convicted of being a felon in possession of a firearm.

The panel held that the 911 call generated reasonable suspicion justifying the stop, where the identified caller using an emergency line was reliable, the reports by three other persons conveyed by the caller contained sufficient indicia of reliability, and the reported activity—possessing a concealed weapon—was presumptively unlawful in California and ongoing.

The panel addressed other issues in a concurrently filed memorandum disposition.

### COUNSEL

Jerome E. Matthews (argued) and Robin Packel, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, Oakland, California; for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Alexis J. Loeb (argued), Assistant United States Attorney; Merry Jean Chan, Chief, Appellate Section; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

RAKOFF, District Judge:

Late on a Saturday evening, a worker at a bar in California called 911 to report that three patrons had seen a man in the area with a pistol on him. In response to this call, the police stopped the man as he drove away, discovered a pistol in his car, and placed him under arrest. The man, defendant-appellant Shane Vandergroen, was subsequently convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Vandergroen now argues that the 911 call should never have led to his stop in the first place because it did not generate reasonable suspicion, and that the evidence of the pistol should therefore have been excluded. We disagree, and affirm the district court's denial of Vandergroen's motion to suppress.[1]

## I. Factual Background

At about 11:27 p.m. on February 17, 2018, an individual ("Witness 2") who worked at a bar called Nica Lounge

---

[1] In a concurrently filed memorandum disposition, we reject Vandergroen's alternative suppression arguments, as well as his challenge to his conviction based on *Rehaif v. United States*, 139 S.Ct. 2191 (2019).

("Nica") in Concord, California called 911[2] to report a man with a gun seen on his person. Witness 2 gave his name, identified his position at Nica, and indicated he was calling from the bar. He explained that three of Nica's customers had told him they saw a man in the area with a pistol "on him." Witness 2 said the man (whom he could see) was in the back parking lot and had just walked into a neighboring bar. Witness 2 described the man as "Latin," "wearing a blue sweater with a Warriors . . . logo," "skinny," and in his early 20s, features that mostly matched Vandergroen's.[3]

Continuing in the call, Witness 2 next reported that the man had walked out of the neighboring bar and was in the parking lot next to Nica Lounge. The operator asked for more details about the man, including whether the suspect had been fighting. Witness 2 said the man had not. The operator also asked Witness 2 where the gun was located on the defendant, and the witness indicated that he would ask the patrons who reported the gun to him. Before Witness 2 could provide more information, however, the man started running through the parking lot by Nica. Witness 2 started reporting the man's movements, including that the man jumped into a black four-door sedan. Witness 2 identified the car as a "Crown Vic," noted the man was driving out of the parking lot, and told police officers arriving on the scene

---

[2] The Government's brief appears to assume that the call was directly to police dispatch rather than to 911. Although the difference is immaterial to our decision, the basis for the Government's assumption is unclear. Given that the district court characterized the call as a 911 call, and the record does not indicate this finding was clearly erroneous, we adopt this characterization. *See United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016) ("We review the denial of a motion to suppress evidence de novo, and any underlying factual findings for clear error.").

[3] Vandergroen is not, however, Latino.

which car to follow. At the end of the call ("the 911 call"), Witness 2 provided his full name and phone number.

In response to the 911 call, dispatch alerted officers that "patrons think they saw a HMA [Hispanic Male Adult] blu[e] warriors logo carrying a pistol." Dispatch directed officers to "1907 Salvio[,] Nica Lounge," and stated,

> 3 patrons think they saw an HMA with a blue sweatshirt on carrying a pistol. We're getting further. . . . HMA wearing a blue sweatshirt with a Warriors logo on it. . . currently IFO Pizza Guys. . . . no 4-15 [*i.e.* no fight] prior to patrons seeing the male with a pistol. 3 females say they saw it on him. We're still getting further. . . . Subject is running[4] toward DV8 Tattoos and just got into a black vehicle. . . getting into a 4-door sedan, black in color . . .

Shortly thereafter, an officer reported over the dispatch "we're gonna do a high-risk car stop." The police then executed a stop of the man, later identified as Vandergroen. During this stop, the police conducted a search of Vandergroen's car and found a loaded semi-automatic handgun under the center console to the right of the driver's seat. An officer then placed Vandergroen under arrest.

Vandergroen was subsequently charged in a single-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before trial, Vandergroen filed a motion to suppress evidence found in

---

[4] Vandergroen started running before the police arrived on the scene, and there is no indication that he did so in response to the police.

the course of his arrest, arguing, *inter alia*, that the 911 call did not generate reasonable suspicion justifying his initial stop. The district court denied the motion. Vandergroen then requested that the case be set for a stipulated-facts bench trial, reserving the right to appeal the denial of the motion to suppress. After accepting the parties' factual stipulations, the district court adjudged Vandergroen guilty. Vandergroen filed a timely notice of appeal.

## II. Standard of Review

We review the denial of a motion to suppress de novo, and any underlying findings of fact for clear error. *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016).

## III.    Analysis

On appeal, Vandergroen argues that evidence discovered in the course of his arrest should be suppressed because the police did not have reasonable suspicion to stop him in the first instance. Under the Fourth Amendment, an officer may conduct a brief investigative stop only where she has "a particularized and objective basis for suspecting the particular person stopped of criminal activity," commonly referred to as "reasonable suspicion." *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (citations omitted). While a tip such as the 911 call may generate reasonable suspicion, it can only do so when, under the "totality-of-the-circumstances," it possesses two features. *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (citation omitted). First, the tip must exhibit sufficient indicia of reliability, and second, it must provide information on potential illegal activity serious enough to justify a stop. *United States v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014). The 911 call here satisfied both requirements.

## A. Reliability

The Supreme Court and this circuit have identified a number of factors that can demonstrate the reliability of a tip, including whether the tipper is known, rather than anonymous, *Florida v. J.L.*, 529 U.S. 266, 270 (2000); whether the tipper reveals the basis of his knowledge, *Rowland*, 464 F.3d at 908; whether the tipper provides detailed predictive information indicating insider knowledge, *id.*; whether the caller uses a 911 number rather than a non-emergency tip line, *Foster v. City of Indio*, 908 F.3d 1204, 1214 (9th Cir. 2018); and whether the tipster relays fresh, eyewitness knowledge, rather than stale, second-hand knowledge, *United States v. Terry-Crespo*, 356 F.3d 1170, 1176–77 (9th Cir. 2004). When evaluating the reliability of a tip such as the 911 call here, in which a caller reports information from a third party regarding possible criminal activity, we consider the reliability of both the caller himself and the third party whose tip he conveys. *See United States v. Brown*, 925 F.3d 1150, 1153 (9th Cir. 2019) (considering both the fact that the caller was known and that the third-party tipster was anonymous in evaluating the reliability of such a tip).

The totality of the circumstances in this case demonstrates that the 911 call was sufficiently reliable to support reasonable suspicion. First, the statements by Witness 2 himself were undoubtedly reliable. Witness 2 provided his name and employment position, making him a known, and therefore more reliable, witness. *See J.L.*, 529 U.S. at 270 (noting that a known informant is more reliable); *see also Rowland*, 464 F.3d at 907 ("[A] known informant's tip is thought to be more reliable . . . ."). Further, Witness 2 "reveal[ed] the basis of [his] knowledge"— explaining that multiple patrons told him that Vandergroen

had a gun on him and offering to ask follow-up questions to the patrons about the exact location of the gun—thereby enhancing the tip's reliability. *Rowland*, 464 F.3d at 908. Finally, the fact that Witness 2 placed his call using an emergency line, which allows calls to be recorded and traced, increased his credibility. *Foster*, 908 F.3d at 1214.

Second, we conclude that, viewed collectively, the statements by Nica's patrons were also reliable. Although the patrons remained anonymous during the call,[5] which generally cuts against reliability, their statements "exhibit[ed] 'sufficient indicia of reliability'" to overcome this shortcoming. *J.L.*, 529 U.S. at 270 (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). The reports were based on fresh, first-hand knowledge. The patrons reported personally seeing the gun on Vandergroen shortly before they reported it to Witness 2. "[P]olice may ascribe greater reliability to a tip, even an anonymous one, where an informant was reporting what he had observed moments ago, not stale or second-hand information." *Terry-Crespo*, 356 F.3d at 1177 (internal quotation marks and citation omitted). Furthermore, the fact that the anonymous tipsters were Nica's patrons who were still at the bar when the 911 call was being made "narrowed the likely class of informants," making their reports more reliable. *Id.* at 1174. Further still, the fact that multiple individuals reported seeing a gun also made the information more reliable. The existence of multiple tipsters, though anonymous, mitigates the specter of "an unknown, unaccountable informant . . . seeking to

---

[5] That the FBI was later able to identify one of the witnesses for an interview, does not alter this analysis. "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search," not after. *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

harass another [by] set[ting] in motion an intrusive, embarrassing police search" by relaying false information. *J.L.*, 529 U.S. at 271–72. Taken together, these factors rendered the information provided by the Nica's patrons through Witness 2 sufficiently reliable to support reasonable suspicion.

*United States v. Brown*, 925 F.3d 1150 (9th Cir. 2019), contrary to Vandergroen's contention, does not suggest otherwise. In *Brown*, we determined that a call made by an identified witness at the behest of an anonymous witness reporting a man with a gun did not support reasonable suspicion because the tip was neither reliable nor indicative of potentially illegal activity. As we explained, "[t]he tip suffer[ed] from two key infirmities—an unknown, anonymous tipster and the absence of any presumptively unlawful activity." *Id.* at 1153. *Brown* does not control in this case because the 911 call here was both more reliable than the tip in *Brown* and (as explained further below) conveyed information about presumptively unlawful conduct.

As to reliability, whereas the tip in *Brown* originated from a single witness who made clear "that she did not want to provide a firsthand report because she '[does not] like the police,'" *id.* at 1152 (alteration in original), the 911 call here conveyed information from three witnesses, and none of them expressed reluctance to be held directly accountable for their reports. Moreover, the caller who relayed the tip in *Brown* did not personally see the suspect. *Id.* By contrast, the Nica employee in this case was looking at Vandergroen while making the 911 call, and was able to help the police identify Vandergroen by describing his movements in real-time. This factor further bolstered the reliability of the tip. *Cf. Foster*, 908 F.3d at 1214 ("One factor supporting the

reliability of a tip is that the tipster claims eyewitness knowledge, coupled with sufficient detail in his description.").

## B.  Potential Illegality of Reported Behavior

While the 911 call was thus reliable, it may only support reasonable suspicion if it also "provide[d] information on potential illegal activity." *Foster*, 908 F.3d at 1214. In other words, a tip must demonstrate that "criminal activity may be afoot," *id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)), and the "absence of any presumptively unlawful activity" from a tip will render it inadequate to support reasonable suspicion, *Brown*, 925 F.3d at 1153. Furthermore, any potential criminal activity identified must be serious enough to justify "immediate detention of a suspect." *United States v. Grigg*, 498 F.3d 1070, 1080–81 (9th Cir. 2007).

The 911 call gave the police reason to suspect Vandergroen was carrying a concealed firearm, which is presumptively a crime in California. *See* Cal. Penal Code § 25400. Witness 2 indicated that patrons had seen Vandergroen with a gun "on him." This language, conveyed to the police by the dispatcher, would suggest to a reasonable police officer that Vandergroen at least potentially had the gun concealed on his body. We have recognized that because California "makes it generally unlawful to carry a concealed weapon without a permit . . . a reasonable officer could conclude that there is a high probability that a person identified in a 911 call as carrying a concealed handgun is violating California's gun laws." *Foster*, 908 F.3d at 1215–16. As such, the tip provided information on potentially illegal activity. This was in contrast to the tip in *Brown*, which did not describe conduct that was presumptively illegal in Washington, where that case arose. *See id.*; *cf.* *Brown*, 925 F.3d at 1153–54 (holding that a tip that a man in

Washington was carrying a gun was not "reliable in its assertion of illegality" because "[i]n Washington State, it is presumptively lawful to carry a gun").

Furthermore, the potentially illegal activity identified in the 911 call was serious enough to justify the "immediate detention of [the] suspect." *Grigg*, 498 F.3d at 1080. In some circumstances, a tip that a suspect has completed only a misdemeanor may not support reasonable suspicion absent a "likelihood for 'ongoing or repeated danger,' or 'escalation.'" *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1175 (9th Cir. 2013) (quoting *Grigg*, 498 F.3d at 1081) (holding that a stop for a reported completed misdemeanor battery was not justified where the suspect was "doing nothing but talking" when the officer arrived). Vandergroen argues that his conduct was too minor to justify a stop because it consisted at most of a completed "wobbler," that is a crime that is punishable as either a felony or misdemeanor. Vandergroen fails to note, however, that the police had reason to suspect he was committing an ongoing crime when stopped in his car because the crime of carrying a concealed weapon includes concealing the weapon in a car. Cal. Penal Code § 25400(a)(1). The tip's indication that Vandergroen was engaging in this continuing illegal activity means that there was an ongoing danger and the immediate detention of Vandergroen was warranted.

## IV. Conclusion

In short, the 911 call in this case was both reliable and provided information on potentially criminal behavior. Witness 2 was reliable as an identified caller using an emergency line, and the Nica patrons' reports he conveyed contained sufficient indicia of reliability to support reasonable suspicion. Furthermore, the reported activity—possessing a concealed weapon—was presumptively

unlawful in California and was ongoing at the time of the stop. Thus, the 911 call generated reasonable suspicion justifying the stop and the district court was correct to deny Vandergroen's motion to suppress the evidence obtained during the stop.

**AFFIRMED.**