**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 23 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

 v.

JAMES EARL TALLEY,

    Defendant-Appellant.

No. 23-10019

D.C. No. 3:22-cr-00028-SI-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted March 28, 2024
San Francisco, California

Before: PAEZ, NGUYEN, and BUMATAY, Circuit Judges.
Dissent by Judge PAEZ, Circuit Judge.

 James Talley appeals the district court's order denying his motion to suppress. Talley entered a conditional guilty plea to being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), reserving the right to appeal the suppression ruling. We have jurisdiction under 28 U.S.C § 1291. We review a district court's denial of a motion to suppress de novo, and any factual findings for clear error.

---

  [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*United States v. Vandergroen*, 964 F.3d 876, 879 (9th Cir. 2020).  We affirm.

Talley argues that the district court erred in denying his motion to suppress the firearm because the anonymous 911 call from the Civic Center Inn lacked sufficient indicia of reliability, and even if the call was sufficiently reliable, any reasonable suspicion dissipated when other potential suspects at the hotel matched the caller's description better than Talley.

To establish reasonable suspicion to stop and frisk, an emergency call must, under the totality of the circumstances, (1) "exhibit sufficient indicia of reliability" and (2) "provide information on potential illegal activity serious enough to justify a stop."  *Id.*  We consider a number of factors when determining the reliability of a tip, including whether the caller is anonymous, whether the basis of knowledge for the tip is revealed, whether the caller uses a 911 number or non-emergency tip line, and whether the caller is relaying second-hand knowledge or eyewitness knowledge.  *Id.* at 879-80.

Here, considering the totality of the circumstances, there was reasonable suspicion to stop and frisk Talley.  First, the caller placed the call through an emergency 911 line, "which allows calls to be recorded and traced, increas[ing] his credibility."  *Id.* at 880.  As the district court found, the call was not completely anonymous, because the caller stated he was calling from the front desk of 790 Ellis and referred to "our staff" and "housekeeping here" being nervous about the

2

person with the gun. The information was also not "stale," but fresh, eyewitness knowledge from someone still at the inn, as the caller was reporting what housekeeping had seen that morning. Furthermore, while on the phone with 911, the caller could be heard conversing with someone in the background and revising his description. Additionally, once the officers arrived on the scene, a housekeeper pointed the officers to the back of the hotel, saying "he's in the parking lot in the back," where Talley was found. Talley also matched most of the description the caller gave of the suspect.[1] We agree with the district court that the circumstances here are similar to those in *Vandergroen,* which held that the 911 call was reliable when the caller, an employee at a bar, was relaying first-hand information from patrons who had seen a man with a gun. 964 F.3d at 881.

Talley argues that reasonable suspicion was dissipated because of other suspects on the scene, and the fact that Talley was not found on the second floor, as the report stated. The officers encountered multiple people who matched some aspects of the tip, and they frisked another man on the second floor whom they

_____

[1] Based on the tip, dispatch reported a description to the officers: "WML [white male Latino], 5'9 SLM BLD, BEANIE, BLK JKT, BLK SHIRT, BLK JEANS, WHI SHOES W/BLK NIKE LOGO." Talley was wearing white Reebok shoes with red and black, a black hoodie, black pants, black gloves, and a balaclava. Although the race did not match Talley, he was wearing a balaclava, making his race difficult to determine. *See Vandergroen*, 964 F.3d at 878 n.3 (finding that reasonable suspicion was established given "features that mostly matched" despite the suspect being a different race than reported by the caller).

thought matched the description, but the others on the scene did not match the tip better than Talley. The witnesses watched Talley walking around the second floor on security cameras before officers arrived, and because it was relatively easy to move from the back second-floor balcony to the parking lot, it was not unreasonable to surmise that the suspect had moved. Finally, the housekeeper directed the officers to the back parking lot, where Talley was the only suspect in the area matching the description at the time officers encountered him.

**AFFIRMED**.

23–10019, *USA v. James Talley*

PAEZ, Circuit Judge, dissenting:

The majority concludes that an anonymous 911 call that offered no firsthand or predictive information nevertheless exhibited sufficient indicia of reliability. In my view, neither the record evidence nor our case law supports such a conclusion. Because I would reverse the district court's denial of Talley's suppression motion, I respectfully dissent.

Our court's case law makes clear that "an anonymous tip that identifies an individual but lacks 'moderate indicia of reliability' provides little support for a finding of reasonable suspicion." *United States v. Brown*, 925 F.3d 1150, 1153 (9th Cir. 2019) (citing *Florida v. J.L.*, 529 U.S. 266, 270–71 (2000)). The majority concludes that the 911 call "was not completely anonymous" because the caller stated that he wanted to remain anonymous but was calling from the front desk of the hotel. But the caller did not actually work at the hotel, nor was he located at the front desk when he called. Notably, when the 911 operator requested that hotel staff assist the police in identifying the suspect, the caller refused, stating that they would not assist responding officers, and adding, "Ok, fuck it, then don't do nothing then, thank you." The call was then disconnected. The 911 call transcript suggests that the call ended because of the operator's request that staff assist the police, which is further evidence of the caller's intent to remain anonymous. It is

well-established that a caller's anonymity makes any information from him less reliable than from a known caller, whose reputation can be assessed and who can be held accountable for misrepresentations. *J.L.*, 529 U.S. at 270. The majority's conclusion that the caller was not completely anonymous because he falsely referred to himself as calling from the front desk finds no support in our case law.

Nor did the tip provide "any predictive information that might have served as indicia of reliability." *Brown*, 925 F.3d at 1153 (citing *Alabama v. White*, 496 U.S. 325, 332 (1990)). The Supreme Court has found a virtually identical anonymous tip insufficiently reliable to create reasonable suspicion. *J.L.*, 529 U.S. at 268, 270–72 (holding an anonymous tip that a young black man in a plaid shirt was carrying a gun did not establish reasonable suspicion to stop and frisk him).

Even assuming that the tip exhibited sufficient indicia of reliability, Talley did not match the description of the suspect. Talley, a black man located in the rear parking lot on the hotel's ground floor, shared little in common with the police dispatcher's description of a white Latino man located on the second floor. Thus, even if the anonymous tip exhibited sufficient indicia of reliability, the officers lacked reasonable suspicion to detain and frisk Talley.

Because the anonymous tip in this case lacked sufficient indicia of reliability, and because Talley did not match the suspect's description even if the

tip was reliable, I respectfully dissent.  I would reverse the district court's ruling, vacate Talley's conviction, and remand.