NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 8 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-783 |
| Plaintiff - Appellee, | D.C. No. 3:19-cr-02688-JLS-1 |
| v. | |
| ZODIAC AZUCENAS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted June 6, 2024
Pasadena, California

Before: CLIFTON and COLLINS, Circuit Judges, and RODRIGUEZ, District Judge.[**]

Appellant Zodiac Azucenas, a 44-year-old United States citizen, was found guilty by a jury of one count of receiving child pornography (18 U.S.C. § 2252(a)(2)) and one count of possessing child pornography (18 U.S.C. § 2252(a)(4)(B)).

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Xavier Rodriguez, United States District Judge for the Western District of Texas, sitting by designation.

From September to December 2016, Azucenas engaged in several sexually explicit online conversations via Facebook Messenger with a 15-year-old girl in the Philippines. Azucenas persuaded the girl to provide photos and videos of her breasts and genitals in exchange for money.

Through performing its own self-initiated searches designed to keep the platform free from sexual exploitation of minors, Facebook discovered these sexually explicit conversations and images. After Facebook employees reviewed the explicit materials, Facebook filed three "CyberTips" with the National Center for Missing & Exploited Children ("NCMEC") in late December 2016 and January 2017. Soon thereafter, the NCMEC forwarded the CyberTips to law enforcement agencies, including the San Diego Internet Crimes Against Children Task Force, where the matter was assigned to Homeland Security Investigations ("HSI") Agent William Thompson ("Agent Thompson").

After locating the Filipino victim and learning more about Azucenas's efforts to induce her to provide sexual images, Agent Thompson applied for and received a state search warrant for Azucenas's Facebook account in April 2017. In addition to confirming the same chats and images memorialized in the CyberTips, the results of this search revealed that Azucenas exchanged sexual photos with other female Facebook users who appeared to be in their teens.

In January 2018, after several months of investigating Azucenas, Agent Thompson applied for and received a federal search warrant for Azucenas's house. In executing this search warrant, HSI agents and the San Diego Police Department discovered a computer and two hard drives that belonged to Azucenas, containing images and videos of minors engaged in sexually explicit conduct.

Azucenas was subsequently charged with one count of receiving child pornography and one count of possessing child pornography. After a jury returned guilty verdicts on both counts, the district court imposed a sentence of 90 months in prison and 10 years of supervised release on each count (concurrent), plus $33,000 in restitution to eleven identifiable victims in the child pornography found in Azucenas's possession.

Azucenas contends that the district court committed three reversible errors. First, Azucenas argues that the district court erred in denying his motion to suppress the child pornography found on his computer. Specifically, he alleges that the district court erred in determining that Facebook did not act as an agent of the government when it searched and reviewed his private user chats; in concluding that the private search doctrine applied to the NCMEC forwarding Facebook's reports of child exploitation materials to law enforcement officials; and in failing to apply the correct "common-law trespassory test" required by *United States v. Jones*, 565 U.S. 400, 409 (2012).

Second, Azucenas alleges that the district court applied the 2018 Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA") to calculate his restitution payment amount but should have instead relied on the statute in effect at the time of the commission of his crimes, the 1996 Mandatory Victim Restitution Act ("MVRA"). Because the AVAA provided a broader definition of "total loss" than the MVRA and required a minimum restitution award per victim, Azucenas argues that sentencing him under the AVAA exposed him to a higher restitution award and thereby violated the Ex Post Facto Clause of the United States Constitution.

Third, Azucenas asserts that the district court failed to provide sufficient justification for imposing two supervised release conditions: i) Special Condition 7 prohibits Azucenas from associating with any child under age 18 absent adult supervision or the probation officer's approval, including his 8- or 9-year old half-sister in the Philippines; and ii) Special Condition 11 requires Azucenas to participate in sex offender treatment methods that he alleges are unreliable.

We have jurisdiction under 28 U.S.C. § 1291, and, for the following reasons, we affirm Azucenas's conviction and sentence.

## I.

Azucenas first challenges the district court's denial of his motion to suppress the child pornography found on his computer and hard drives.

In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Vandergroen*, 964 F.3d 876, 879 (9th Cir. 2020). We conclude that the lower court did not err in rejecting Azucenas's argument that Facebook acted as an agent of the government when it conducted its search of his user-to-user messages.

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. But the Fourth Amendment only "limits searches conducted by the government, not by a private party, unless the private party acts as an 'instrument or agent' of the government." *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998) (per curiam). To determine whether a private party acted as an agent of the government under the Fourth Amendment, courts consider "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1994) (citation and internal quotation marks omitted).

With respect to the first *Cleaveland* requirement, the government "must be involved in the search 'either directly as a participant or indirectly as an encourager of the private citizen's actions.'" *United States v. Rosenow,* 50 F.4th 715, 731 (9th Cir. 2022) (quoting *United States v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981)). Here, an affidavit from a Facebook employee affirmed that Facebook's searches of

Azucenas's messages and corresponding filing of CyberTips to the NCMEC were not at law enforcement's request, with Facebook having "no record of receiving legal process from the government."

We considered a similar scenario in *Rosenow*. There, Yahoo investigated numerous user accounts that it suspected of selling child pornography and notified the NCMEC of its results. *Id.* at 725. Because there was no evidence that Yahoo "was spurred into investigating [the defendant] by the government" or otherwise "incentivized, directed, or encouraged" to continue its investigations by law enforcement, we concluded that there was insufficient government participation to trigger Fourth Amendment scrutiny. *Id.* at 732–33. For this same reason, in the absence of any law enforcement assistance requests or other direction, we cannot find that the government "knew of and acquiesced in" Facebook's independent review of Azucenas's user-to-user messages. *Cleaveland*, 38 F.3d at 1094.[1]

In analyzing the second *Cleaveland* requirement, we examine whether the private party acted to "assist law enforcement efforts," or whether it had a "legitimate, independent motivation to further its own ends." *Id.* (citation and internal quotations omitted). The affidavit from the Facebook employee explained

---

[1] We have also expressly rejected Azucenas's argument that an Electronic Service Provider's ("ESP") compliance with the requirement contained in the Protect Our Children Act of 2008 to report any child sexual exploitation to the NCMEC transforms the ESP into a government agent. *See Rosenow*, 50 F.4th at 730–32.

that Facebook possessed "an independent business purpose in keeping its platform safe and free from harmful content and conduct, including content and conduct that sexually exploits children." As we explained in *Rosenow*, such a "desire to purge child pornography from [ESPs'] platforms" represents "a legitimate, independent motive apart from any interest that the ESPs had in assisting the government." *Rosenow,* 50 F.4th at 734. Once such independent motive is established, "[t]hat motivation [is] not negated by any dual motive to detect or prevent crime or assist the police." *Cleaveland*, 38 F.3d at 1094.

The district court also correctly concluded that because the NCMEC and Agent Thompson relied upon the same evidence that had been obtained and reviewed by Facebook personnel for Facebook's own business purpose, the private search doctrine was applicable. This doctrine exempts Fourth Amendment scrutiny of any later government review of the same facts already disclosed by a private search. *See United States v. Jacobsen*, 466 U.S. 109, 117 (1984).

In challenging the district court's finding, Azucenas urges us to conclude that the NCMEC qualifies as a government agent, as the Tenth Circuit did in *United States v. Ackerman,* 831 F.3d 1292 (10th Cir. 2016). But doing so would not salvage Azucenas's argument. In *Ackerman*, AOL identified that an email included one attachment consisting of child pornography and then provided this email (containing three other unreviewed attachments) to the NCMEC. *Id.* at 1305–06. The NCMEC

then expanded on AOL's initial search by examining the email itself as well as the three other attachments never reviewed by AOL. *Id.* The Tenth Circuit thus concluded that the private search doctrine was inapplicable. *Id.* at 1306–07.

However, as even Azucenas acknowledges, Facebook provided an affidavit in this matter affirming that its employees reviewed the entire contents of the files uploaded to the NCMEC. Accordingly, regardless of whether we define the NCMEC as a state actor, the record makes plain that the NCMEC did not exceed the scope of Facebook's private search. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (quoting *Jacobsen*, 466 U.S. at 117) (finding no Fourth Amendment violation where detective searches of child pornography on the defendant's computer derived from a private party's original search). Since there is no evidence in the record indicating that the NCMEC exceeded the scope of Facebook's private search, we need not further analyze whether the NCMEC is a state actor, and we conclude that the private search doctrine is applicable.

Azucenas also insists that the lower court failed to apply the "common-law trespassory test" articulated in *United States v. Jones*, 565 U.S. 400, 409 (2012) (explaining that a search occurs if law enforcement trespasses on a constitutionally protected area to obtain information, even if the trespass does not violate a

reasonable expectation of privacy). But *Jones*, which addresses the scope of what constitutes a "search" under the Fourth Amendment, has no bearing on this case, in which the relevant search was fully conducted by a private entity, namely, Facebook.

For these reasons, we conclude that there was insufficient governmental involvement in Facebook's searches of Azucenas's account to trigger Fourth Amendment protection.

## II.

Second, we find that the lower court did not violate the Ex Post Facto Clause of the United States Constitution by ordering Petitioner to pay $33,000 in restitution under a version of 18 U.S.C. § 2259 that post-dated his underlying criminal conduct.

For a criminal or penal law to be ex post facto, the law "must be retrospective, that is, it must apply to events occurring before its enactment" and "it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29 (1981). At the time of the offense conduct—September 22, 2017 (Count One) and January 9, 2018 (Count Two)—the MVRA was in effect. At sentencing, however, the court applied the AVAA, an amendment to the MVRA not made effective until December 7, 2018. The AVAA amended the MVRA, *inter alia*, to i) impose a

minimum award of $3,000 per victim and ii) expand the definition of "full amount of the victim's losses."[2] 18 U.S.C. § 2259(c)(2).

Because Azucenas failed to object to the application of the AVAA—and, in fact, agreed that it was the applicable statute—we review for plain error. For Azucenas to prevail under plain error review, he must demonstrate "(1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). Plain error "is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Id.* at 1002 (quoting *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir. 1997)).

With respect to the first two prongs of plain error review, the district court committed a plain error in applying the AVAA rather than the MVRA, the statute in

---

[2] Specifically, prior to the passage of the AVAA, 18 U.S.C. § 2259 defined the "full amount of the victim's losses" as including any "costs incurred by the victim for— (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense." *See United States v. Kennedy*, 643 F.3d 1251, 1260 (9th Cir. 2011) (quoting 18 U.S.C. § 2259(b)(3) (1996) (amended 2018)). The AVAA amendment includes losses "that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim." 18 U.S.C. § 2259(c)(2).

effect at the time of the offense conduct. The Supreme Court has cautioned, "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The AVAA does not contain language permitting retroactive application. In fact, 18 U.S.C. § 2259B(d) provides, "[i]t is the sense of Congress that individuals who violate this chapter prior to the date of the enactment of the [AVAA], but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed." The district court thus erred in imposing restitution under the AVAA.

However, under the third prong of the plain error test, Azucenas still "bears the burden of persuading us that his substantial rights were affected." *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc) (holding an error affects a criminal defendant's substantial rights where "the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding" (citation and internal quotation marks omitted)).

Here, the government sought the minimum amount permissible under the AVAA ($3,000) for each of the 11 victims for a total of $33,000. At the April 14, 2023 sentencing hearing, Azucenas's counsel conceded that the "Government has submitted extensive documentation from 11 alleged victims" and "I have no contrary

factual information regarding the restitution, which is why I had intended to stipulate to the amount." At the April 28, 2023 restitution hearing, the district court concluded that each victim substantiated losses resulting from Azucenas's possession of images of their sexual abuse. Indeed, the district court observed "these victims could have requested and this Order could have been for much more…than what I'm doing," explaining "many of these victims had far more than the $3,000."

First, the record supports that the lower court based its imposition of $3,000 per victim on the evidence advanced by the prosecution, rather than a simple application of the minimum restitution amount statutorily mandated by the AVAA. Because the MVRA still required courts to impose restitution in the amount of any loss proven by any victim, it is not clear how the AVAA's introduction of a $3,000 minimum restitution amount—to the extent the Court even relied on it—prejudiced Azucenas's rights. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) (holding the MVRA "requires a court to order restitution for the full amount of the victim's losses" (internal quotation marks omitted)).

Further, in his opening brief, Azucenas failed to carry his burden to establish that any change in the definition of the scope of available restitution made any practical difference in this case and that the use of the MVRA's definition would have resulted in a different outcome.

## III.

Where a defendant objects to a condition of supervised release at sentencing, we review for abuse of discretion the conditions of supervised release imposed by a district court. *See United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). In applying this standard of review, "we give considerable deference to a district court's determination of the appropriate supervised release conditions, reviewing those conditions deferentially." *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006). "In short, conditions are permissible if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003) (citation and internal quotation marks omitted).

At the time of sentencing, Azucenas objected to the lower court's imposition of Special Condition 7, which prohibits him from associating with any child under age 18—including his 8- or 9-year-old half-sister residing in the Philippines—without adult supervision or the probation officer's approval. Azucenas alleges that we have previously recognized "the fundamental right to familial association" as a "particularly significant liberty interest," thereby triggering an enhanced procedural requirement that mandates the sentencing judge to "point to the evidence in the record on which it relies and explain how on the basis of that evidence the particular

restriction is justified." *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th Cir. 2012). Azucenas asserts that the district court failed to provide such an explanation justifying this restriction.

Azucenas offers no evidence that his relationship with a half-sibling rises to the level of an "intimate relationship" akin to a life partner, child, or fiancé required to trigger such enhanced procedural requirements. *See United States v. Magdaleno*, 43 F.4th 1215, 1222 (9th Cir. 2022) (rejecting applying enhanced procedural requirements where appellant failed to present any evidence of an "intimate relationship" with siblings and half-siblings). Indeed, the record does not even establish that Azucenas has met the child.

Under our standard deferential review of supervised release conditions, a district court "need not state at sentencing its reasons for imposing each condition of supervised release, so long as its reasoning is apparent from the record." *Id.* at 1221. Following Azucenas's objection to Special Condition 7, the sentencing judge explained that the penalty "bears a reasonable relationship to what occurred here." We agree. The evidence substantiates that Azucenas initiated contact with minors on Facebook to solicit nude photos and engage in sexual conversations, and, accordingly, this restriction on such communications protects the public.

Further, the sentencing judge explained a reasonable limitation to Special Condition 7, noting "[i]t's not going to restrict him from seeing [children] as long as

there's somebody there, as long as probation knows about it." The record makes plain that Special Condition 7 serves to protect the public, while still being tailored to avoid impinging on Azucenas's liberty. *See United States v. Blinkinsop*, 606 F.3d 1110, 1121 (9th Cir. 2010) (noting "with approval" that special conditions limiting interaction with children for a defendant convicted of a child pornography crime "can be tailored" by requiring permission of the probation officer); *United States v. Apodaca*, 641 F.3d 1077, 1084–85 (9th Cir. 2011) (upholding a condition of release that allowed a defendant convicted of possessing child pornography to have contact with children in the presence of their duly notified parent or legal guardian).

Because Azucenas failed to object to Special Condition 11 at the time of sentencing, we review for plain error. *Magdaleno*, 43 F.4th at 1221.

Azucenas appeals Special Condition 11 to the extent it requires him to take a visual reaction time assessment (commonly called "Abel testing"), a diagnostic exam for sex offenders that studies "visual reaction time" based on how long a subject stares at slides of various categories of adults and children. We find this argument to be without merit. We have previously held that a district court "could reasonably conclude that the Abel test has value in rehabilitation and protection of the public as part of a treatment program for assessing a sex offender's interest in children." *United States v. Stoterau*, 524 F.3d 988, 1007 (9th Cir. 2008); *see also United States v. Daniels*, 541 F.3d 915, 926 (9th Cir. 2008) (holding that the district

court "did not abuse its discretion in imposing a condition of supervised release that may require [appellant who pled guilty to possessing child pornography] to submit to Abel and polygraph testing"). Accordingly, Azucenas cannot establish that the district court committed plain error in imposing Special Condition 11.

**AFFIRMED.**